UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| M. CLAUDIA GAROFALO, | ) | |
| | ) | Case No: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| NEW ORLEANS CITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff, M. CLAUDIA GAROFALO, by and through her undersigned counsel, hereby files this Complaint and sues NEW ORLEANS CITY ("DEFENDANT"), as the entity responsible for the streets and curb cuts in and around Touro Infirmary in New Orleans, for injunctive and declaratory relief, damages (nominal and compensatory), and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Americans with Disabilities Act" or "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act" or "RA"), and negligence pursuant to Louisiana Code of Civil Procedure 2317, and states as follows:

## **JURISDICTION AND PARTIES**

1. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.*, (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising under the Rehabilitation Act, 29 U.S.C. §794 *et seq.*

2. This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as the Federal claims.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because DEFENDANT'S

Property, which is the subject of this action, is located in Orleans Parish, Louisiana.

4.    Plaintiff, M. CLAUDIA GAROFALO, (hereinafter referred to as "MS. GAROFALO"),

is a person of the age of majority and a citizen of the State of Louisiana.

5.    MS. GAROFALO resides in Orleans Parish on Adams Street, New Orleans, Louisiana.

6.    MS. GAROFALO is a qualified individual with a disability under the ADA and RA.

MS. GAROFALO is a paraplegic due to a spinal cord injury.

7.    Due to her disability, MS. GAROFALO is substantially impaired in several major life

activities. Specifically, MS. GAROFALO is unable to ambulate without a wheelchair.

8.    Upon information and belief, DEFENDANT is the political entity responsible for

owning, administering, operating, and maintaining the curb cuts, sidewalks, and streets in

and around Touro Infirmary in New Orleans. As discussed above, however, to the extent

DEFENDANT does not own some of the sidewalks, curbs, or streets in and around Touro

Infirmary, it is nonetheless responsible for their construction, repair, replacement, and/or

maintenance.

9.    DEFENDANT is responsible for complying with the obligations of the ADA.

10.   All events giving rise to this lawsuit occurred in Orleans Parish, Eastern District of

Louisiana.

## **STATEMENT OF FACTS**

### **a. Ms. Garofalo Falls While Trying to Cross the Street Near the Touro Infirmary Because of its Unsafe and Inaccessible Condition.**

11.   MS. GAROFALO is a resident of Orleans Parish and receives medical care at Touro

Infirmary, located at 1401 Foucher Street, New Orleans, Louisiana 70115.

2

12.    MS. GAROFALO is an advocate and a member of the Louisiana Statewide Independent Living Council and the City of New Orleans Mayor's Advisory Council for Citizens with Disabilities.

13.    On June 21, 2022, MS. GAROFALO was in the Touro Infirmary area for a medical appointment.

14.    MS. GAROFALO attempted to cross the street at the corner of Prytania Street and Foucher Street. However, when MS. GAROFALO entered the street from the curb, the front wheel of her wheelchair became caught in a hole in the street, causing MS. GAROFALO to be thrown from her wheelchair and into the street.

15.    When MS. GAROFALO fell into the street, she landed on her left hand and elbow and sustained scratches.

16.    Since the fall, MS. GAROFALO has experienced pain in her left shoulder and right scapula. She is currently undergoing medical treatment for her injuries.

17.    The street adjacent to the curb cuts has large gaps, cracks, and holes, making it unsafe for individuals who use wheelchairs to navigate from one side of the street to the other.

18.    The intersection at Foucher and Prytania Streets is full of cracks, bumps, and holes. Quite simply, there is no safe way for an individual using a wheelchair to cross Foucher Street or Prytania Street due to the condition of the roadway.

**b. Defendant Had Notice of the Unsafe and Inaccessible Condition of the Curb Cuts and Streets in the Touro Infirmary Area Prior to Ms. Garofalo's Fall.**

19.    DEFENDANT maintains a "RoadWork" website that "shows block-by-block details on

planned, active, and complete construction projects and permitted road closures.[1] This
website also displays the conditions of the roadways in New Orleans from 2016.[2]

20.     According to the RoadWork website, the condition of the pavement of Prytania Street
        between Foucher and Aline Streets was rated as "Very Poor" in 2016.[3]

21.     DEFENDANT had knowledge that the condition of the pavement in the Touro Infirmary
        area was in poor condition for at least six years before MS. GAROFALO'S fall.

22.     MS. GAROFALO raised her concerns about the curb cuts and streets in the Touro
        Infirmary area during a November 17, 2021 Virtual Meeting for the ADA Transition Plan
        for Public Rights-of-Way Update hosted by the City of New Orleans Department of
        Public Works ("DPW").[4] MS. GAROFALO attended the meeting as an advocate and her
        comments were recorded in the meeting notes.

23.     During the meeting, MS. GAROFALO stated that it was "Impossible to navigate around
        Touro neighborhood. It's a disaster area." A note following MS. GAROFALO'S
        comments indicated that the DPW would "follow up" with her.[5]

24.     Upon information and belief, MS. GAROFALO'S complaints about the condition of the
        streets and curb cuts in the Touro Infirmary area went largely ignored and DEFENDANT
        took no steps to repair the inaccessible and dangerous conditions.

25.     MS. GAROFALO also made complaints about the conditions of the streets and curb cuts

---

[1] *See* https://gis.nola.gov/roadwork/ (last accessed December 8, 2022).
[2] *Id.*
[3] *See* https://gis.nola.gov/roadwork/?x=-10029092.047377376&y=3494070.0984516772 (last accessed December 8, 2022).
[4] *See* City of New Orleans Americans with Disabilities Act Transition Plan for the Public Rights-of-Way Update dated August 2022, p. 33, accessible at https://nola.gov/nola/media/DPW/CNO-DPW-ADA-Transition-Plan-Update-August-2022.pdf (last accessed December 8, 2022).
[5] *Id.*

in the Touro Infirmary area to David Lee Simmons of the Roadwork NOLA, Mobility & Safety Outreach Department. MS. GAROFALO voiced her concerns during a virtual meeting on or around March 23, 2022.

26.     Upon information and belief, Mr. Simmons largely dismissed MS. GAROFALO'S complaints and took no steps to remedy the unsafe and inaccessible conditions in the Touro Infirmary Area.

27.     The DPW offers an online "Accessibility Dashboard" that "shows accessibility features" throughout New Orleans and "allows the user to track the City's progress toward achieving accessible public rights-of-way."[6]

28.     The map of the intersection at Prytania and Foucher Streets from the Accessibility Dashboard indicates that there are no compliant ramps.[7]

29.     DEFENDANT had ample notice through its own inspections and MS. GAROFALO'S complaints that the streets and curb cuts in the Touro Infirmary area were in disrepair, dangerous, and not accessible for individuals with mobility disabilities.

---

[6]  *See*  https://nola.gov/next/public-works/programs/accessibility-of-streets-and-sidewalks/  (last accessed December 8, 2022.)

[7]  *See*   https://nolagis.maps.arcgis.com/apps/dashboards/abf44d7493fb40bdb447d526e4c136e8 (last accessed December 8, 2022).



   c.  **Defendant Denies Knowledge of Condition of Streets and Curb Cuts in the
       Touro Infirmary Area.**

30.   Following her fall, on or around August 26, 2022, MS. GAROFALO completed a City of

      New Orleans General Liability Incident Form. MS. GAROFALO described how the fall

      occurred and listed the medical treatment she had received for her injuries to date.

31.   MS. GAROFALO sent the form to a claims adjuster for the City of New Orleans Risk

      Management Division on August 26, 2022.

32.   On September 7, 2022, MS. GAROFALO received a response to her incident form that

      denied responsibility for her injuries. DEFENDANT claimed that it had "no prior notice

of the defect" despite the multiple forms of notice detailed above.

## COUNT I – VIOLATION OF TITLE II OF THE
## AMERICANS WITH DISIBILITIES ACT

33.   PLAINTIFF realleges and reavers paragraphs 1-32 as if they were expressly restated herein.

34.   Upon information and belief, DEFENDANT is a public entity, subject to the ADA, and is responsible for the property which forms the basis of this suit: the curb cuts and streets at the intersection of Prytania Street and Foucher Street in front of Touro Infirmary in New Orleans, Louisiana (hereinafter referred to as the "Property").

35.   The Property provides a thoroughfare to individuals traversing to and from Touro Infirmary and other medical providers in the area.

36.   When DEFENDANT constructs, repairs, replaces, or maintains curbs and streets, it promotes the general public's convenience by overcoming a collective action problem and allowing citizens to focus on other ventures. Moreover, when DEFENDANT builds or alters a sidewalk or curb, it helps meet a general demand for the safe movement of people and goods.

37.   As stated by the Fifth Circuit in the case of *Frame v. City of Arlington* "If a city official authorizes a public sidewalk to be built in a way that is not readily accessible to disabled individuals without adequate justification, the official denies disabled individuals the benefits of that sidewalk no less than if the official poured the concrete himself."[8]

38.   MS. GAROFALO has used or attempted to use the Property in the past. Many of MS. GAROFALO'S medical providers have offices in that area and she visits the

---

[8] 657 F. 3d 215, 226 (5th Cir. 2001).

Property several times a month for physical therapy sessions.

39.   MS. GAROFALO lives approximately three (3) miles from the Property.

40.   MS. GAROFALO has tried to use the Property, but she has experienced great difficulty as a result of noncompliant features as discussed below in Paragraph 50. As a result of these barriers, MS. GAROFALO suffered physical injuries during a fall on June 21, 2022.

41.   As such, MS. GAROFALO was deterred, and is still deterred, from attempting to utilize the Property.

42.   MS. GAROFALO has personally observed and is aware of mobility-related barriers at the Property, as discussed below in Paragraph 50.

43.   MS. GAROFALO intends to, and will, enter the Property to utilize its services in the future, but fears that she will encounter the same barriers to access which are the subject of this action.

44.   The barriers discussed below in Paragraph 50 are excluding MS. GAROFALO from the programs, services, and activities offered at the Property.

45.   The barriers discussed below in Paragraph 50 are excluding MS. GAROFALO from the equal opportunity to participate in, or benefit from the programs, services, and activities which are offered to the general public at the Property.

46.   MS. GAROFALO presently fears that she will encounter the mobility-related barriers which exist at the Property when she returns to the Property in the near future.

47.   Upon information and belief, DEFENDANT has failed to adopt any alternatives to barrier removal which would provide MS. GAROFALO with meaningful access to the

basic services which are available for public use at the Property.

48. The services that MS. GAROFALO has not been able to access at the Property is the ability to safely cross the street and traverse the Property to attend medical appointments.

49. MS. GAROFALO is deterred, and will continue to be deterred, from utilizing the Property until the barriers to access that are at issue in this case have been remedied and modified.

50. Upon information and belief, DEFENDANT'S mobility-related ADA barriers and violations include:

    **a.** There are cracks, holes, and gaps in the pavement next to the curb cuts.

    **b.** The pavement in the pedestrian street crossing is in poor condition and contains numerous cracks and gaps that have caused MS. GAROFALO'S wheelchair to flip over.

 

**c.** Other mobility-related ADA barriers at the Property, to be identified following a complete inspection of the Property.



51. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

52. Many of the barriers at issue in this case are a result of construction or modification work performed after the passage of the ADA.

53. As such, the barriers at issue that were constructed or modified after the passage of the ADA are obligated to comply with the strict "new construction / alteration" standards.

10

54.   Despite DEFENDANT'S obligation to comply with the new construction/alteration standards, it has failed to do so.

55.   Further, DEFENDANT has failed to maintain the Property in a readily accessible condition.

56.   DEFENDANT has discriminated against MS. GAROFALO by denying her full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq.*

57.   DEFENDANT has discriminated, and is continuing to discriminate, against MS. GAROFALO in violation of the ADA by excluding and/or denying MS. GAROFALO the full and equal benefits of their services, programs, and/or activities by failing to, inter alia, have accessible facilities. MS. GAROFALO personally experienced the numerous barriers to access on the Property.

58.   28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections – (I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." DEFENDANT has violated this provision by providing its services, programs, and/or activities at an inaccessible facility.

59.   DEFENDANT has discriminated against MS. GAROFALO by excluding her from participation in, and denying the benefits of, the services, programs, and/or activities at their Property because of MS. GAROFALO'S disability, all in violation of 42 U.S.C. § 12132.

60.   Upon information and belief, DEFENDANT continues to discriminate against MS. GAROFALO by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of failure to remove architectural barriers.

61.   DEFENDANT had notice that the pavement and curb cuts at the Property were in poor condition and constituted mobility-related ADA barriers through its inspections of the Property in 2016 and 2022 as discussed above.

62.   MS. GAROFALO also notified DEFENDANT of the inaccessible condition of the Property during a November 17, 2021 meeting and various complaints to the DPW and RoadWork Nola.

63.   DEFENDANT made an intentional choice to disregard MS. GAROFALO'S requests that the Property be maintained in an accessible condition.

64.   DEFENDANT had notice of MS. GAROFALO'S disability, limitations, and need for accommodation, but nonetheless chose to ignore her requests.

65.   The above conduct constitutes intentional discrimination.

66.   The above conduct constitutes deliberate indifference.

67.   Upon information and belief, MS. GAROFALO has been denied access to, and has been denied the benefits of services, programs and/or activities of DEFENDANT'S Property,

and has otherwise been discriminated against and damaged by DEFENDANT because of DEFENDANT'S discrimination, as set forth above.

68.     MS. GAROFALO will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy DEFENDANT'S discriminatory violations and avoid piecemeal litigation, MS. GAROFALO requires a full inspection of DEFENDANT'S Property in order to catalogue and cure all the areas of non-compliance with the ADA.

69.     MS. GAROFALO has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

70.     MS. GAROFALO is suffering irreparable harm.

71.     Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant MS. GAROFALO injunctive relief including an Order DEFENDANT to alter the Property to make its programs, services, and accommodations readily accessible to and useable by MS. GAROFALO and all other persons with mobility-related disabilities as defined by the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

72.     MS. GAROFALO adopts and re-alleges the allegations contained in paragraphs 1-71 as if fully stated herein.

73.     MS. GAROFALO brings this claim against DEFENDANT, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

74.    The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United
> States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by
> reason of his or her handicap, be excluded from the participation
> in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial
> assistance or under any program or activity conducted by any
> Executive agency or by the United States Postal Service.   29
> U.S.C. § 794(a).

75.    Upon information and belief, as set forth herein, DEFENDANT has violated the

Rehabilitation Act by intentionally excluding MS. GAROFALO, solely by reason of her

disabilities, from the participation in, and denying her the benefits of, and have otherwise

subjected her to discrimination under, DEFENDANT'S programs and activities.

76.    Upon information and belief, a non-exclusive list of DEFENDANT'S violations of the

Rehabilitation Act and discriminatory conduct against MS. GAROFALO are evidenced

by:

A.    Denying MS. GAROFALO access to, and the opportunity to participate in or

benefit from, the aids, benefits, activities, programs, accommodations and

services offered at the Property;

B.    By otherwise limiting MS. GAROFALO'S in the enjoyment of the rights,

privileges, advantages and opportunities enjoyed by individuals without

disabilities who receive DEFENDANT'S aids, benefits and services;

C.    Failing to maintain the Property in an accessible manner; and

D.    Excluding MS. GAROFALO from participation in, and the benefits of,

DEFENDANT'S services programs and activities as a result of DEFENDANT'S

Property being inaccessible to or unusable by MS. GAROFALO.

14

77.     Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which MS. GAROFALO is more likely than not going to encounter upon her future visits to the Property. MS. GAROFALO brings this action:

   A.     To redress injuries suffered as a result of DEFENDANT'S discriminatory actions and inactions set forth herein;

   B.     To reasonably avoid further and future injury to MS. GAROFALO as a result of DEFENDANT'S ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

   C.     To ensure DEFENDANT'S Property is accessible as required by the relevant applications of Title II of the ADA;

   D.     To be made whole and ensure future compliance; and

   E.     To reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

78.     Only through a complete inspection of the Property, undertaken by MS. GAROFALO and/or her representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

79.     Upon information and belief, DEFENDANT is the recipient of federal funds.

80.     Upon information and belief, as the recipient of federal funds, DEFENDANT is liable for damages to MS. GAROFALO as a result of its acts and omissions constituting intentional discrimination.

81.     MS. GAROFALO repeatedly informed DEFENDANT that the curb cuts and adjacent

pedestrian street crossings at the Property were in disrepair and were dangerous for individuals who use wheelchairs to cross. Nonetheless, DEFENDANT failed to respond to MS. GAROFALO'S complaints or remedy the barriers outlined in this action.

82.   DEFENDANT had an opportunity to accommodate MS. GAROFALO. Despite receipt of her written notice of the inaccessible state of its Property, DEFENDANT failed to provide MS. GAROFALO with any accommodation / modification in response to her requests.

83.   DEFENDANT had knowledge of MS. GAROFALO'S disability, limitations, and requested accommodations.

84.   Despite knowledge of MS. GAROFALO'S disability, limitations, and requested accommodations, DEFENDANT failed to accommodate MS. GAROFALO. DEFENDANT'S failure to accommodate MS. GAROFALO when faced with her stated need constitutes intentional discrimination.

85.   As set forth above, MS. GAROFALO has been denied access to, and without the relief requested herein, will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by DEFENDANT solely by reason of her disability, and has otherwise been discriminated against and damaged solely by reason of her disability as a result of DEFENDANT'S Rehabilitation Act violations set forth above.

86.   MS. GAROFALO has been obligated to retain undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and litigation expenses, incurred in this action. MS. GAROFALO is

entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 29 U.S.C. §794(b).

87.   Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant MS. GAROFALO injunctive relief, including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and, granting MS. GAROFALO compensatory damages for DEFENDANT'S discriminatory actions.

**COUNT III**
**NEGLIGENCE PURSUANT TO LA. CIV. CODE ART. 2317**

88.   MS. GAROFALO adopts and re-alleges the allegations contained in paragraphs 1-87 as if fully stated herein.

89.   Upon information and belief, DEFENDANT is the owner of the Property which forms the basis of this suit.

90.   At all times relevant to this action, the Property was under the direction and control of DEFENDANT.

91.   On June 21, 2022, MS. GAROFALO was attempting to cross the street at Prytania Street and Foucher Street when the front wheel of her wheelchair got caught in a hole in the street adjacent to the curb cut. MS. GAROFALO was thrown from her wheelchair into the street, sustaining scratches and other injuries.

92.   Upon information and belief, DEFENDANT was aware of the dangerous condition of the Property through its own inspections conducted in 2016 and 2021.

93.   Upon information and belief, DEFENDANT was also aware of the dangerous condition of the Property through MS. GAROFALO'S complaints made during the November 2021

meeting and correspondence to RoadWork Nola.

94.     DEFENDANT knew or should have known that the street adjacent to the curb cuts at the
        Property had large gaps and holes and that the pedestrian street crossing was in a state of
        disrepair.

95.     DEFENDANT knew or should have known that individuals with mobility disabilities
        who use wheelchairs regularly traverse the Property because of its proximity to Touro
        Infirmary and other medical offices.

96.     Upon information and belief, it was reasonably foreseeable that individuals who use
        wheelchairs, including MS. GAROFALO, would fall and sustain injuries while trying to
        traverse the Property because of it dangerous condition.

97.     Upon information and belief, the condition of the Property created an unreasonable risk
        of harm.

98.     DEFENDANT could have prevented MS. GAROFALO'S injuries by repairing the holes,
        gaps, and other defects present at the Property and/or maintaining the Property in a
        reasonably safe condition.

99.     However, DEFENDANT failed to exercise reasonable care by repairing the holes, cracks,
        and other defects at the Property or otherwise maintaining the Property in a reasonably
        safe condition.

100.    DEFENDANT had a duty to maintain the Property in a reasonably safe condition.

101.    DEFENDANT was negligent in its duty to maintain the Property in a reasonably safe
        condition.

102.    MS. GAROFALO'S fall on June 21, 2022 was caused actually and proximately by the

negligence of DEFENDANT.

103.    Due to DEFENDANT'S failure to maintain the Property in a reasonably safe condition

and repair the defects identified by MS. GAROFALO, MS. GAROFALO sustained

bodily injuries, past and future pain, suffering, mental anguish, inconvenience, limitations

of activities, and loss of enjoyment of life, in addition to past and future medical

expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, MS GAROFALO prays that:

A.    This Court issue a Declaratory Judgment that determines that
DEFENDANT is in violation of Title II of the Americans with Disabilities
Act;

B.    This Court issue a Declaratory Judgment that determines that the property,
programs and activities owned, operated and administered by
DEFENDANT is in violation of the Rehabilitation Act;

C.    This Court grant permanent injunctive relief against DEFENDANT
Ordering it to cease violating the statutory and regulatory requirements of
the ADA and RA and that it be Ordered to take steps to bring the Property
into compliance with accessibility provisions and requirements of the
ADA and RA;

D.    This Court grant permanent injunctive relief against DEFENDANT
including an Order to make all necessary alterations to the Property to
make them readily accessible to and usable by individuals with disabilities

to the extent required by the ADA; and to require DEFENDANT to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

E.      This Court enter an Order directing Defendants to alter and modify the Property as appropriate and necessary to comply with the ADA and the Rehabilitation Act;

F.      This Court award MS. GAROFALO:

    i.      Compensatory and nominal damages pursuant to ADA and/or Rehabilitation Act;

    ii.     Compensatory damages pursuant to Louisiana Code of Civil Procedure 2317 (negligence);

    iii.    Reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175;

    iv.     Interest on all amounts, at the highest rates and from the earliest dates allowed by law;

    v.      Any and all other equitable or legal relief that this Court finds necessary and appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

MS. GAROFALO demands trial by jury on all issues.

Dated: December 8, 2022

Respectfully Submitted,

**BIZER & DᴇREUS, LLC**
*Attorneys for Plaintiff*

/s/ Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DᴇREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: andrew@bizerlaw.com
        gdereus@bizerlaw.com
        ewest@bizerlaw.com